All righty, our next case today is AST & Science LLC v. Delclaux Partners SA. We'll hear first from Ms. Pander. Good morning, Your Honors. May it please the Court. Bethany Pander of Greenberg-Trarig on behalf of the appellant, Delclaux Partners SA. A jurisdictional defect is dispositive of this appeal and requires the Court to vacate the final summary judgment entered on Delclaux's counterclaim and remand for dismissal of this action. Because neither diversity nor federal question jurisdiction was present at the time that AST filed its original complaint, subject matter jurisdiction is lacking, and the District Court exceeded its authority in ruling on the merits of the parties' claims. So I disagree with you about, I agree that there was no diversity jurisdiction. At least that's what it appears to me on my review. But I'm not so sure about federal question jurisdiction because the breach that AST alleged depends on our interpretation of federal law, right? I mean, in order to determine whether your client, well, in order to determine whether your client was entitled to fees or breached the contract, I guess, instead, we have to determine whether they acted outside of the scope of the contract and violated FINRA and SEC rules, don't we? Well, Your Honor, your question posed leads us exactly to where we need to go, which is the way that the contract claim was alleged here. When we look at this embedded federal question jurisdiction, this is a special and slim category of cases that this Court in the Supreme Court has authorized can meet that standard. And when we look at AST's claim, this was a contract claim. It is not a claim that arises under federal law. The obligations that AST was claiming that Del Clo owed to AST are created by the contract. They're not created by federal law. It's true, but the whole liability, right, turns on the interpretation of federal law. And I mean, maybe that's, you know, it is a narrow exception. It needs to be evident on the face of the complaint. But it seems like that is basically the beginning and end of whether or not your client violated the contract. Respectfully, Your Honor, I think that's an overly simplistic interpretation of the application of the Grable test to this specific claim. So when we look at the Grable test, it requires that issues be necessarily raised, actually disputed, substantial and capable of resolution in federal court without disrupting that balance approved by Congress. Which of those four sub-prongs do you think is your strongest force? Substantiality, Judge Newsom. And when we look to the substantiality inquiry under Grable, the Supreme Court has given us three factors that guide that inquiry. And that's the importance of the issue to the federal system as a whole, and as well as, and that turns on whether it's a pure question of law, a question that will control in many other cases, or a question that the government has a strong interest in litigating in a federal forum. And when we look at decisions from this court, as well as Supreme Court decisions that have applied those three factors, we find that there's no substantiality on any of those three. Cases that involve fact-bound and situation-specific applications of federal law are insufficient to establish a substantial federal question. And when we look at MDS Canada Incorporated versus RadSource Technologies, which was a 2013 decision from this court, this court reasoned that a state law claim did not have substantial federal questions integrated into it in order to confer federal question jurisdiction, even though there was a patent issue and an exclusive statute that granted federal courts with jurisdiction over patent claims. That's because the source of the obligations that were at the heart of the claim were the party's individual contract, and that's exactly what we have here. A similar example is in Empire Health Choice Assurance versus McVeigh, which is a 2006 decision from the United States Supreme Court. There was no federal question over reimbursement claims there that dealt with the Federal Employer Health Benefits Act, even though that was a necessary element of the plaintiff's right to relief because the claim was fact-bound and situation-specific. This has even greater application here when we look at what the Finder's Fee Exception actually is and the scope of the party's agreement. This is a contract claim that turns on an uncodified exception to federal law, which AST has described in its own complaint as developing through inference mostly from SEC no-action letters. That is not the type of special and slim category of cases that fall into a substantial federal question. Let me ask the question in a slightly different way, going back to where Judge Rosenbaum began. Is it not so that in order to determine if there was a breach of the Finder's Fee Agreement, wouldn't the court have to also determine whether Delclaw's actions required it to register as a broker? Perhaps, Your Honor, but under McVeigh and MDS... You say perhaps. Isn't that indisputably so? In part, Your Honor, but when we look at the... When they say you breached, the agreement said you couldn't do X, Y, and Z. You had to register. They said you couldn't register. Is there any way for the court to ultimately answer the bottom-line question here about breach of contract without determining whether or not Delclaw's actions required it to register? Yes, Your Honor, and that's because there were four independent breach allegations that were alleged in the complaint, and all of them are directly tied to the agreements. When we look at paragraph 52 on docket entry one, pages one through nine, AST alleged that Delclaw breached the agreement first by engaging in activity that exceeded the agreed-upon scope of Delclaw's activities under the agreement. That is a very generic catch-all allegation that would include not only perhaps actions that could have required Delclaw to register as a broker, but also any other conduct that would have been outside the scope of the agreement. That's not the one that's going to be your problem, so keep talking and talk about the second and third. This is the reason I asked you about which of the four prongs you think is your strongest horse, because I think as to the necessarily decided piece, which is what judges Rosenbaum and Marcus have been asking you about, I'm not, frankly, very convinced by your position. As to substantiality, I think your position is quite strong, but I think as to necessarily decided, you're going to have a really uphill battle telling us that in deciding the contract claim, you didn't really have to think about federal law. I think that's pretty tough. And, Your Honors, if you disagree with us on the first two points, the failing the substantiality inquiry is sufficient for this court to hold that there was no federal question jurisdiction in the first instance, and it would be our position that each of them are independently dispositive, so if the court chooses to focus on substantiality, the result is the same, that the district court exceeded its authority in ruling on the party's claims. When we look at the additional allegations, the breach allegations that tie to the agreement, we have subsections two and three, which were the ones that describe compliance with all securities or other laws, rules, or regulations applicable to Del Close activities under the  That is a catch-all provision that if this court holds that a contract like this that has general allegations requiring compliance with any laws is sufficient to confer federal question jurisdiction, essentially any breach of contract dispute that contains such a boilerplate provision will be fixed in federal court. And that's why the substantiality inquiry exists. Turning to the Exchange Act, the exact same analysis applies, and when we look at Merrill Lynch, Pierce, Fenner, and Smith v. Manning, which is a 2016 Supreme Court decision, we have even more support for how the substantiality inquiry is not met here. In Manning, the Supreme Court ruled there was no federal question jurisdiction over state claims brought against securities brokers because the suit was not brought to enforce obligations under the Exchange Act, and that's exactly what we have here. The cases that AST has relied on in its briefing are clearly distinguishable as we articulated in our briefs. Those were cases that required the court to resolve contested federal securities laws, and they were against national exchanges where the duties at issue were, for example, in NASDAQ OMX Group v. UBS Securities. That case turned on NASDAQ's duty to operate a fair and orderly exchange. That's different than a contract dispute, and so we would submit that there's no federal question jurisdiction here. Turning quickly to the magistrate judge's merits rulings, we would stand on our briefing to the extent that the court doesn't have additional questions, but the magistrate judge committed serial errors in construing the language of the lion tree and the finder's fee agreements in only AST's favor. First, the magistrate judge erred by rewriting the language of the contract. Second, by finding ambiguity and selectively crediting third-party extrinsic expert testimony. And third, by ignoring or resolving factual disputes. And any of those errors would require the court, even if it had jurisdiction, which we submit respectfully the court does not, that this would require a reversal of the summary judgment order and remand for further proceedings below. When we look at the evidence that was in the record that the magistrate judge and then the district court judge on its own de novo review ignored, there was a supplemental declaration by Del Clos that disputed each and every fact that essentially the proffered testimony by AST was submitted to prove, and we would submit that that's sufficient in and of itself to create a factual dispute that made it inappropriate to resolve this issue on summary judgment. And unless the court has further questions, I'll reserve my additional time. All right. Thank you.  We'll hear next from Mr. Rue. Good morning, Your Honors. Jeffrey Rue from Foley and Lardner on behalf of Appellee AST and Science LLC. May it please the court. I'll get to jurisdiction in just a second. But the reason we're here today, Your Honors, is because Del Clos Partners has insisted on being paid fees for financial transactions that it had absolutely nothing to do with. It never interacted with any of the investors or otherwise contributed to their decisions to invest. Nevertheless, it's pressed this claim for fees based on an overly simplistic and self-serving interpretation of a contract to which it's not even a party. Del Clos didn't really do anything during the litigation to gather evidence for this contractual interpretation. I don't know if that comes across as clearly in the briefing. Liontree, the other party to this contract, was never deposed. Do you want to address the jurisdictional question? Sure, Your Honor. Jurisdiction in this case was pled under both 1331 and 1332. But at its core, this has always been a federal question case. And the central claim in AST's complaint is that it engaged Del Clos to assist in its Series A and Series B financing rounds, acting in the capacity of a finder, which is a construct that has been derived from the SEC's interpretation and application of federal law. Del Clos was contractually obligated to stay within the parameters of a finder, and Del Clos made express representations that for any of its activities, it would have all necessary licensors and registrations. All right. So that sounds a lot about necessarily decided. You know the four subprongs of the test, right? You know the boilerplate about this being a special category, slim category. I did a little bit of research and prep for the argument. And so far as I can tell, since Motley v. LNN was decided in 1908, the Supreme Court has found this kind of Grable-style federal question jurisdiction to exist four times, right? Most recently in Gunn and Empire, no. So this is definitely a disfavored category of cases. So you've got to show that it was necessarily decided, fine. I think you might be right about that. Actually litigated, fine. I think you might be right about that. But what about substantiality? I agree with your adversary that that's her best horse. So what about substantiality? Yeah. So substantiality is probably the strongest point that Del Clos makes here. But I think we still easily satisfy that too. And if you look at the cases, what they're talking about is two things that they go on. Some of the cases do seem to suggest that the federal issue, it's sort of incidental to the case specifically. It's not really substantial. But there are a line of cases that say, it's got to be substantial beyond just these litigants here. And we meet that prong. So what we're talking about here is how federal law gets construed. This point that they've raised about, hey, the finder exception is uncodified. It's still being developed. That cuts in our favor. And that cuts for substantiality. So what's going on here is, if the finder exception is construed in a certain way by the court and the parameters of it are defined in a certain way, that's going to be outcome determinative of this case. But it's also going to apply to a lot of the other cases. Maybe I'm just not understanding. But I don't see it that way. I mean, to the extent that this is some sort of like common law-ish kind of doctrine being developed on a case-by-case basis through SEC no action letters, that seems to make it much less a pure question of law, the sort that we've described would meet this exception, and much more a kind of context-intensive, fact-intensive kind of thing that'll apply to this case and some margin of the next case. And then that case will apply to that case and some margin of the following case. But it doesn't seem like the kind of thing that we would call a pure question of law. It is a question of law insofar as what the SEC is doing in these no action letters is deciding what Section 10b or 15b means when it says you cannot be involved in inducing a sale of securities and what that means to be involved in the sale of securities. And they're taking that and saying, if your activity is a certain limited category, you're not going to be required to do the registration. And courts have looked at this. And some courts in this circuit and in other circuits have said, yes, this exception exists. The Eighth Circuit has said, we don't really think there is such an exception. This is a question of law. And as the district court correctly found, resolving this issue will help define the parameters of this finder exception. And that's beyond just this case. Does this problem come up often, or is this really an obscure and almost fact limited problem? It does come up, Your Honor. There was a back in 2020, actually, the former SEC chair proposed that they would codify this finder exception because this is an issue to come up. And we cited a number of SEC litigations that they brought around people acting as unregistered. Of course, the fact that they never did suggest something to me about what they thought, that is to say whether it was a big deal or not. Sorry, Your Honor. Doesn't the fact that they didn't codify it sort of cut the other way? It doesn't suggest that they did not find this to be a significant enough problem arising frequently enough to yield the conclusion that they ought to codify in this area to make the law clear. I don't know if it suggests that. It suggests that this is an important enough issue that it was raised. It didn't get resolved. It's still a live issue. Courts are still dealing with it right now. So the resolution of this case, I think that's what's important. The resolution of this case will impact cases beyond this case. And the issue. That can't alone be sufficient, right? Because every resolution of every case will always affect some other case at some margin. In order to cabin this exception, which the Supreme Court has clearly indicated to us, you need to cabin this exception. It's kind of a not rogue exactly, but it's atypical. And the test can't be, will this case have some effect on the next case? It's the nature of the law that's being disputed. So in some of these cases where they find no federal question jurisdiction, the issue of what the patent exception was, for example, in the MBS case, nobody was disputing that. It was concrete. People understood what that was. Here, this finder exception is in flux. That's why this has that general applicability. And plus, every case basically that has dealt with U.S. securities laws in terms of that being the federal question, uniformly, they might not be Supreme Court cases, but almost uniformly, those have been federal question cases. They have found that they meet the exception in gray. Because U.S. securities laws and ensuring compliance with those is a very substantial issue to the U.S. government and ensuring that courts, federal courts, get to weigh in on that and make sure that it. I just said, make sure I understand your argument. Are you saying any time interpretation of a securities law is involved, it's necessarily a substantial question? I'm not saying that it's necessarily, I'm just saying that the scope of the case law, Your Honor, suggests that that in itself, whether it's in term, we've cited the Tuberville case and the D'Alessio cases in our brief. And they say that when you're dealing with issues of construing FINRA rules, when you're dealing with issues of construing securities laws, those have inherently a substantial concern to the federal government. And those cases there, I would submit, deal with particular federal issues that are more concrete than what we have here with the finder's fee in terms of their development and how much those would impact those cases where jurisdiction was found, how much those would have impacted cases beyond themselves. Here, I think we have broad applicability and we're dealing with securities laws and FINRA rules. Why doesn't the securities law aspect of this case, in fact, cut the other way? So as in Gunn, when the Supreme Court said no to this expansion, one of the things the Supreme Court said was, hey, this is a patent case and you've got exclusive jurisdiction over real patent cases, actual patent cases, it called them in the federal court. So no big deal. The federal courts will continue to hear actual cases and develop this law. Likewise here, securities, sort of actual securities law cases will be litigated in the federal courts. And so the federal courts in real federal question cases will continue to develop securities law. Isn't the analogy pretty close? I don't think so, Your Honor. Gunn is very distinguishable for two reasons. Again, as I already described, the patent exception that was being pressed there wasn't in flux. Nobody was debating what that meant, the parameters of it. So that's a big distinction. Number two, the court's focus there was also on the fourth prong, that this is a legal malpractice case that's being brought up and the state courts have a substantial interest in basically making sure they're policing their people in terms of how they practice under the bar. This has nothing, that's an important state issue. Here we don't have that. The only issue that really matters in this case is compliance with federal law and what federal law means and how federal law is construed in this case determines the outcome of the case. And so the US government has in federal courts have a very strong interest in dealing with that. Again, to go back to where we began, I don't think there's much dispute about the first issue that the resolution of this issue is a big deal in this case, but that doesn't answer the substantiality prong. And I want to probe that a little bit more. One measure of whether a federal issue is substantial is the frequency with which it arises. Is this a question, if we look at the case law, we'll find a whole lot of litigation on? You will find substantial litigation on what the finder exception is and on individuals or entities acting in violation of their duties to register. There's a, we've cited a number of cases in our briefing, and this is not a, as the reason I say it is, it struck me. I know you do cite someone strikes me as a handful. It's, it's an, it's the issue. I'm really trying to discern whether this is a big deal in the securities law. It is a big deal in securities law. We've, we've cited some secondary sources, people publish on this. There was a article I saw that just came out a few months ago. People are still talking about this in the securities bar. It is a very live issue as to how the contours of this exception are set and how they're applied here. The issue only developed sort of in the 90s of the Paul Anka no action letter is when this started. And so it's at this point in time, it's been around for a while, but it is still a live issue. And there's a number of cases that deal with it. So this will absolutely have effect. When you see the enforcement cases, which are out there about acting as unregistered broker dealers, the type of conduct they're talking about is very similar to what they'll clo was involved in here. So this will have general applicability. One thing I'll point out is that even in they'll close amended complaint, this is amended counterclaim paragraphs, one 18 to one 30. It was titled, they'll call acted only as a finder. And there's a whole discussion in those allegations. They're saying, well, these are the things that I did. And there's a federal case that isn't actually cited in any of the briefing here. But the point is, is that they're arguing about what this concept of federal law means and saying, I'm clear here. I didn't need to register because of this. That's the whole issue in the case. And that's an issue that that how the court defines it is going to apply outside of the parameters of just this case. So so it is substantial. And and again, as to reveal and the Alessio said, when you're dealing with FINRA rules, when you're dealing with U.S. Securities laws, the U.S. Government has a very important interest in ensuring uniformity among the courts and not having individual states opine on those. And so, again, almost all of those cases where that's the context, the gray books test is satisfied there. I can talk a little bit about the merits unless there are further questions on jurisdiction here. But I just want to point out that, as I said at the outset, that there really wasn't much done here in terms of developing disputes of material fact. The the DelCle was a stranger to the contract that's at issue. His interpretation of what it meant is completely irrelevant. The record evidence was uniform and overwhelming as it described exactly what the purpose of these provisions in the agreement between AST and Liontree meant, how they were to operate and why they were adopted the way they do. There was nothing put forth in response. And I'll point the court to sections 3C of the opening brief of DelCle and also 3C of the reply brief. And why I want to highlight those are because those are the sections where DelCle says basically the most of the argument is the contrast is unambiguous. The language itself very clearly shows that it's ambiguous. There are questions that just aren't answered. But they say if it's ambiguous, well, the case still should be remanded because there are genuine disputes of material fact based on that evidence. And why I highlight those cases or those sections in the briefing is because they don't actually cite any record evidence to show a dispute. There's only two things that are pointed out, a declaration from Liontree's manager that really says nothing about the interpretation of the contract. That's a strain to try to say that it does. And then this self-serving classic sham affidavit that DelCle submitted during summary judgment briefing saying, here's what I think the contract means. Again, his interpretation is irrelevant. That's it. Three years of litigation and we've got two pieces of evidence that they argue, say, hey, this creates a genuine dispute of material fact. District Court got it right when it said, no, the evidence is uniform. It's in favor of the party to the actual contract here. And the contract means what it says. And when it's construed in that way, the case is clearly should be affirmed. Thank you, counsel. All right. We'll hear again from Ms. Pander. Thank you, your honors. To touch briefly on some of the points that AST raised. At the outset of the argument, counsel stated that the core of this case has always been about federal question jurisdiction. When, in fact, we look back on the procedural history of this case, AST originally represented that this case was, in fact, a diversity case when it indicated so on its civil cover sheet. And even so, I mean, when we're talking about whether there's a substantial issue of federal law, we're looking to whether the question is substantial in terms of the body of federal law, right? I mean, so let's focus on that if we could. Yes, your honor. So when we look at the substantiality inquiry that the court was questioning AST about, we look first to whether this is a purely legal issue. The best evidence that the finder's exception and the application of the finder's exception was not a purely legal issue in this case was the fact that the magistrate judge recommended denial of summary judgment. There were too many factual disputes for the magistrate judge to articulate whether one way or the other Del Close conduct breached the finder's fee agreement. And that shows that this is not a pure issue of law, which is the type of case where this embedded federal question jurisdiction properly lies. When we look at the cases that have recognized application outside of the parties, we're looking at cases like, excuse me, when we look at those cases, we're looking at not application to just the specific, a context free inquiry into the issue of law. Here, it is true that there is no codified actual federal exception. But as Judge Marcus pointed out, that perhaps cuts best in Del Close paper, that this isn't substantial enough of an issue for any codification to result. Although AST has argued that there is a slew of federal cases, they have only cited a few, mostly district court decisions. And the majority of those decisions, in fact, found that there was alternative jurisdiction there so that the parties were also diverse or that there was a supplemental jurisdiction over the claims. The claims that issue in those cases like NASDAQ and D'Alessio, those included plaintiff's requests for relief under either federal claims or the actual plaintiff's request for relief asked for declaratory relief, establishing a breach. That's not what AST alleged here. AST asked for disgorgement and asked for monetary damages based on the party's independent contract. And the resolution of whether Del Close breached the finder's fee agreement or not through its action does not have application outside of the facts of this case. That's why this court cannot find that there's a substantial federal question. Although one may have been raised, it just doesn't reach that high enough level, which again, we would refer the court back to MDS Canada, which is where this court looked at the fact that there is a federal issue that is a part of a claim, even if it's an essential part of the party's claim for relief, that's insufficient to confer federal question jurisdiction. And we would represent that not only through, I discussed with the court breaches one, two and three in paragraph 52 of the complaint, but an additional reason that shows this wasn't a substantial federal question was that AST could have prevailed on its claim just by its final breach, which was completely agnostic to federal law. So whether Del Close refused to return confidential information obtained from AST under the agreement. We would rest on our briefing as to the remaining points and ask this court to vacate the summary judgment as entered without jurisdiction. Thank you. All right. Thank you, counsel. We'll be in recess until tomorrow.